# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| RICK A. BURROWS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT ) <br> OF THE NAVY; CARLOS DEL TORRO, ) <br> **Serve Party at**: ) <br> General Counsel of the Navy ) <br> Naval Litigation Office ) <br> 720 Kennon St., SE, Room 233 ) <br> Washington Navy Yard, DC 20374-4013 ) <br> ) <br> and ) <br> ) <br> UNITED STATES DEPARTMENT ) <br> OF THE NAVY BOARD FOR ) <br> CORRECTION OF NAVAL RECORDS, ) <br> **Serve Party at**: ) <br> General Counsel of the Navy ) <br> Naval Litigation Office ) <br> 720 Kennon St., SE, Room 233 ) <br> Washington Navy Yard, DC 20374-4013 ) <br> ) <br> Defendants. ) | Case No.: _____ <br><br> JURY TRIAL DEMANDED |

## PETITION FOR DAMAGES

COMES NOW, Plaintiff, Rick A. Burrows, by and through counsel, and for his Petition for Damages against Defendants, United States Department of the Navy, Secretary of the Navy Carlos Del Torro, and the United States Department of the Navy Board for Correction of Naval Records, states to the Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Rick A. Burrows (hereinafter "Mr. Burrows") is a resident of St. Charles County, Missouri.

2. Defendant, United States Department of the Navy, Secretary of the Navy Carlos Del Torro (hereinafter the "Navy") is a Commander in the US Navy, and in his official capacity is a Resident of the District of Columbia.

3. Defendant, United States Department of the Navy Board for Corrections of Naval Records (hereinafter the "Naval Board of Corrections"), is a governmental entity located in the District of Columbia.

4. Jurisdiction and venue are proper in this Court under Article III, Section 2, of the United States Constitution. U.S. Const. art. III, § 2.

## FACTUAL ALLEGATIONS TO ALL COUNTS

5. Mr. Burrows entered Delayed Entry Program on 27 August 1983.

6. Mr. Burrows was duly licensed in the State of Illinois as an Emergency Medical Technician.

7. Mr. Burrows entered active duty in the United States Navy on (11) January 1983.

8. Mr. Burrows went through Naval Hospital Corps School at Naval Medical Center, San Diego. He graduated on or about 6 June 1983 with Honors of a 91.29 grade average.

9. On 8 June 1983, Mr. Burrows reported for duty at Naval Hospital Long Beach.

10. On or about 8 June 1983, Mr. Burrows was stationed at the (Naval Hospital Long Beach) where he worked in the Manpower Management Department under HMCS Stanley Stewart and HMC Janet Gardner.

11. On or about 5 July 1983, Mr. Burrows was transferred to the Nursing Service Department where he did Nursing Service Orientation.

12. On or about 8 July 1983, Mr. Burrows was assigned to the general medicine ward, Ward 4 West, despite having an Emergency Medical Technician license in the State of Illinois at the time and expressing interest in Emergency Medicine.

13. On or about 13 July 1983, Mr. Burrows requested to go on leave in October of 1983 for a friend's wedding. Mr. Burrows filed the request with Lt. Linda Pastrana.

14. Upon information and belief, Lt. Linda Pastrana placed the request up the chain of command.

15. On 26 July 1983, Mr. Burrows requested to take the Los Angeles County Emergency Medical Technician test through Continuing Education. Mr. Burrows has taken the pre-test offered by the Command and scored a 92%. He was denied the opportunity to take the test by LCDR White. This denial was based upon "They were unsure if my licensing from the State of Illinois Emergency Medical Technician was valid."

16. In late July 1983, Mr. Burrows received the request back from Lt. Pastrana after Lt. Pastrana had gone on vacation for two weeks. Upon her return from vacation she stated that Mr. Burrows had filled out the request for leave "wrong". Mr. Burrows resubmitted the request.

17. The request for leave made it up to LCDR Robert Young who denied the request with the remark that "No two ancillary personnel are to be on leave at the same time."

18. Upon receiving the denial, Mr. Burrows went to locate his immediate supervisor, HM2 Danette Weller.

19. While looking for HM2 Weller, Mr. Burrows was asked by Captain J. Loughney, Director of Nursing Service what he was doing there, to which Mr. Burrows explained the situation involving his request for leave in October. Captain J. Loughney told Mr. Burrows that she would take care of the problem with his request.

20. A few days later, Mr. Burrows was called into LCDR Robert Young's office. LCDR Robert Young was angry for Mr. Burrows for allegedly breaking the chain of command with his request for leave, even though Captain J. Loughney had intervened without Mr. Burrows requesting her to intervene. Mr. Burrows and LCDR Robert Young worked out the situation with the stipulation that Mr. Burrows would push his leave up ten (10) days and would forfeit his leave if any other person on the ward requested leave during that time.

21. On or about September 23-26, 1983, Mr. Burrows came down with a bad case of sinusitis but he still went to work on the Ward.

22. On or about 26 September 1983, Mr. Burrows requested from LCDR White to take off 30 September 1983 in order to complete personal business related to his leave which was to start on 1 October 1983. LCDR White said that she would look into it.

23. On or about 27 September 1983, during a day off, Mr. Burrows went to sick call to receive treatment for his sinusitis, where he was told that if his symptoms were not better within twenty-four (24) hours to return to sick call for further treatment.

24. On or about 28 September 1983, Mr. Burrows was scheduled to work. Mr. Burrows gave morning report and then went to inform the charge nurse that he was going back to sick call to be treated for his sinusitis.

25. Mr. Burrows was treated and was placed on a Sick-in-Quarters (SIQ) status for the day.

26. Mr. Burrows informed the charge nurse and his superiors that he had been placed on SIQ and went straight to his quarters, where he stayed the rest of the day except to get out to get lunch and dinner, and to fill out a financial form tied to his upcoming leave.

27. On or about 29 September 1983, Mr. Burrows returned to work with no issues.

28. On or about 30 September 1983, while at work on the ward after receiving morning report, LCDR White, despite also having been on SIQ for her sinuses from September 28-30, 1983, came up to Mr. Burrows waving the SIQ slip in her hand and stating "That was pretty damn convenient of you after I told you that you couldn't have the day off! You've also forfeited all the duty time that you built up!"

29. On or about 22 October 1983, Mr. Burrows returned from leave.

30. From October to November 1983, Mr. Burrows continuously encountered hostility from his supervisors on the ward, Lt. Pastrana and LCDR White.

31. In November 1983, Mr. Burrows requested to be transferred to another ward.

32. Mr. Burrows requests were blocked from being sent up the chain of command by Lt. Pastrana and LCDR White.

33. From November to December 1983, Mr. Burrows made some minor mistakes on the Ward that included beds not being made because patients were not willing to get out of bed to have them made, medications being a little late (but still given to patients), and one incident where Mr. Burrows attempted to help a patient shower when the patient was not supposed to shower.

34. In December 1983, Lt. Judy Glenn was made the Charge Nurse of 4 West as Lt. Pastrana had been transferred to Japan.

35. Due to these minor incidents, Lt. Judy Glenn recommended that Mr. Burrows have a psychiatric examination. Upon his protest, Lt. Judy Glenn advised Mr. Burrows that if he did not volunteer for one it would show up on his military record. Therefore, Mr. Burrows decided to volunteer for a psychiatric examination.

36. The psychiatrist recommended that Mr. Burrows attend group therapy due to the pressures he was facing on the ward.

37. On or about 28 December 1983, Mr. Burrows requested from his immediate supervisor, Lt. Judy Glenn, to attend an advanced school.

38. Lt. Glenn approved the request and sent the request up the chain of command to LCDR White.

39. On or about 13 January 1984, after not hearing anything regarding his request, Mr. Burrows asked HM2 Weller and HM1 Robert Terleski, both in the upper chain of command, if they had seen his request. Both HM2 Weller and HM1 Terleski had not seen the request and went to look for it on behalf of Mr. Burrows. Both HM2 Weller and HM1 Terleski found the request recommending that the request be denied and signed by LCDR White in a message box. LCDR White had failed to send the request up the chain of command as was her duty.

40. During the first part of January 1984, Mr. Burrows made three (3) medication errors that involved medications being delayed. All errors were caught by Mr. Burrows before his shift was over and Mr. Burrows dispensed the correct medication to all three (3) patients. Mr. Burrows took it upon himself to write incident reports for each instance and was assured by Lt. Judy Glenn that as long as the medications were passed within a couple of hours, the incident reports would not be attached to his antidotal file and the incident reports would be dispensed of.

41. A few days after the last of the above-mentioned incidents, Lt. Glenn informed Mr. Burrows that she was in fact attaching the incident reports to his antidotal file.

42. Mr. Burrows passed the test for the Navy's Blue Book Manuel, which normally after passing the test advancement to E3/HN was automatic.

43. Due to the above incident reports and the denial of his request to be placed in an advanced school, both HM2 Weller and Lt. Glenn advised Mr. Burrows not to even bother requesting to be advanced to HN/E3 status as it would almost certainly be denied.

44. Despite the above warning, in early February 1984, Mr. Burrows requested to be advanced to HN pending his annual evaluation. Within forty-eight (48) hours the request had been denied all the way up the chain of command.

45. After the denial Mr. Burrows asked to see his antidotal record. Upon looking at his record the last antidotal report in the record was from 19 August 1983.

46. Mr. Burrows proceeded to be harassed and hounded by his superiors to leave the Navy, despite having commendations from patients, (endorsed by Captain Mowad), that he helped treat on the Ward.

47. On or about 16 February 1984, Mr. Burrows had an orthopedic appointment scheduled for 1:00 P.M. and a muster scheduled for 2:30 P.M. followed by work from 2:45 P.M. to 11:30 P.M. The orthopedic clinic was running slower that day and at 2:10 P.M. Mr. Burrows paged HM2 Weller and phoned the Nursing Service Office to inform them of his whereabouts and that he would likely not be making the 2:30 P.M. muster.

48. Despite his efforts to alert the staff of the scheduling conflict and despite arriving at 2:55 P.M. and his ability to take report and to complete his scheduled shift, Mr. Burrows was hounded by Lt. Glenn and the senior corpsman for being late.

49. On or about 20 February 1984, Lt. Glenn informed Mr. Burrows that she was putting him on report for having an unauthorized absence (UA) for the February 16th incident and to report to Security.

50. Mr. Burrows could not have been guilty of an unauthorized absense because he had notified Nursing Service of his whereabouts, and therefore his absence was not unauthorized.

51. Mr. Burrows reported as ordered to Security. After discussing the events with the Chief on duty, Mr. Burrows thought the matter was dropped.

52. On or about 6 March 1984, Mr. Burrows was presented to Captain Arthur .R. Pearson, Executive Officer for Naval Hospital Long Beach on the charges of being (UA).

53. Mr. Burrows explained the situation to Captain Pearson. Captain Pearson dismissed the charges against him but informed Mr. Burrows that he would be placing an Administrative Remarks page (also known as Page 13) into Mr. Burrows' service record. Attached as Exhibit A is a copy of Mr. Burrows Page 13.

54. There's no documentation of any counseling that occurred prior to or after the page 13 was administered in Mr. Burrows military record.

55. After this incident, Mr. Burrows requested a Mast with Captain Mowad.

56. On or about 17 March 1984, Mr. Burrows attended a Request Mast with Captain Mowad, HMC Rininger, and HM1 Terleski where Mr. Burrows, after explaining his problems with the personnel running the Ward, asked to be sent out to Naval Station Terminal Island under HMC Rogers and HMCS Sobon. Both HMC Rininger and HM1 Terleski agreed that Mr. Burrows should be released from Nursing Service and placed on a probationary period to see if he was the crux of the problem or if he was in a personality conflict.

57. On or about 18 March 1984, Captain Mowad informed Mr. Burrows that he would remain on the Ward until 30 May 1984 and then Captain Mowad would decide if Mr. Burrows was to be advanced to HN/E3 or discharged from the military.

58. On or about 19 March 1984, Mr. Burrows was called into Captain Pearson's office to sign the Page 13 that was being placed in his service record, to which Mr. Burrows signed. See Exhibit A.

59. On or about 24 March 1984, Mr. Burrows received a letter of appreciation from a patient he had been treating for the past seven (7) weeks as well as a commendation from Captain Mowad. Attached as Exhibit B are the letters of appreciation.

60. On or about April 1984, two incidents occurred with patients getting the wrong dosage of medication and/or having IVs not replaced quickly enough, although Mr. Burrows had been following orders from Nurses and his superiors and the ward was extremely busy that night, these incidents were blamed on Mr. Burrows. Both his superiors, Ensign Walsh and Uddenberg, as well as Mr. Burrows all wrote up incident reports explaining what had happened.

61. Sometime later, Mr. Burrows was presented with the paperwork that Ensign Walsh had filled out and told to sign said paperwork. The paperwork stated that Mr. Burrows had changed the rate of an IV by his own discretion which is not what happened. Mr. Burrows refused to sign the memos as they were factually inaccurate.

62. No patient was harmed or demise was caused by Mr. Burrows or documentation in his service record.

63. Upon information and belief, several corpsmen had complained of incompetence by Ensign Walsh.

64. Mr. Burrows was forced by LCDR White to sign the memos along with a statement that Mr. Burrows did not agree with the contents of the memos.

65. On or about 24 April 1984, Mr. Burrows was ten (10) minutes late for the morning muster but was not late to his shift on the Ward. As a punishment, Mr. Burrows was put on report.

66. On 8 May 1984, Mr. Burrows was transferred from Nursing Service to Operating Management under Chief Gayle Hudson. He was placed at the front desk answering phones,

67. On or about 8 May 1984, HM1 Smith in Manpower Management Office summoned Mr. Burrows and informed him that he would be discharged via "Project Upgrade 84." Attached as Exhibit C is Mr. Burrows' Notification of Administrative Separation.

68. On or about 11 May 1984, Mr. Burrows contacted a Navy lawyer, Lt. Watkins, to try and halt being discharged. After discussing Mr. Burrows evaluations, Lt. Watkins advised Mr. Burrows not to fight the discharge as he was getting an Honorable Discharge. Although this was true, Mr. Burrows was discharged prior to the two (2) year requirement for veteran's benefits.

69. On 25 May 1984, prior to the completion of his contractual term, Mr. Burrows was honorably discharged from the United States Navy and was given a re-enlistment code of RE-4 which stipulated that Mr. Burrows was barred from re-enlisting in any other branch of the military. Attached as Exhibit D is Mr. Burrows Certificate of Release and Discharge.

70. On several occasions since 25 May 1984, the most recent being in 2016, Mr. Burrows has petitioned the Naval Board for Correction of Naval Record and has been consistently denied due to a "lack of evidence," even though Mr. Burrows has provided statements to the Board that corroborate his claims that he was prejudicially discharged from the Navy and has provided the basis for his argument that the Navy did not follow its own rules and regulations.

71.     Mr. Burrows most egregious mistake was being twenty-minutes late due to a doctor's appointment, which should not necessitate a discharge from the Navy.

## COUNT I
## VIOLATION OF DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (All Defendants)

72.     Mr. Burrows re-alleges and incorporates by reference, as if more fully stated herein, the allegations in the Factual Allegations to All Counts.

73.     Mr. Burrows was discharged from the Navy under Naval Op 043/84 (hereinafter "Project Upgrade 84") and Naval Military Personnel Manual 3630300 (hereinafter "MILPERSMAN 3630300"). Attached as Exhibit E is a copy of MILPERSMAN 3630300.

74.     According to MILPERSMAN 3630300:

> A member may be separated when it is determined, in accordance with the guidance of MILPERSMAN 3610200, that the member is unqualified for further naval service by reason of unsatisfactory performance.

75.     MILPERSMAN 3630300 defines unsatisfactory performance as follows:

> (1) Performance of assigned tasked and duties in a manner that is not contributory to unit readiness and/or mission accomplishment as documented by a page 13 entry of the members service record; or
>
> (2) Failure to maintain required proficiency in rate as reflected by two consecutive enlisted performance evaluations, either regular o special, with unsatisfactory marks for professional factors of 1.0 in either military or ratings knowledge performance or with an overall evaluation, where applicable, of 2.0.

76.     On or about 19 March 1984, Mr. Burrows was ordered to sign a Page 13 by Captain Arthur R. Pearson, stemming from an Executive Officer's Inquiry concerning an alleged unauthorized absence charged against Mr. Burrows by Lt. Judy Glenn that had occurred on 16 February 1984, and resulted in Mr. Burrows being 20 minutes late, even though Mr. Burrows

had informed his superior officers at the Nursing Service Office of his whereabouts and that he would be late due to the doctor's appointment that was scheduled on his time running over schedule. See Exhibit A.

77. The Page 13 that Mr. Burrows received was faulty in that Page 13's are required to have four (4) items in the body of the Page 13: (1) the problem, (2) the solution, (3) the results if the problems are not corrected, and (4) a reasonable time frame to fix the problem.

78. Mr. Burrows' Page 13 did not include a reasonable time frame to fix the problem. See Exhibit A.

79. In a memo sent from Military Personnel Command (MilPers) at Washington D.C. to command at Naval Hospital Long Beach on 14 July 1983, concerning another service member, MilPers in Washington D.C. notifying the Naval Hospital Long Beach command for documenting the required counseling by the Naval Hospital Long Beach command in regards to identified deficiencies in performance and/or conduct and also reprimanded the Naval Hospital Long Beach for not including definitions of a reasonable timeframe in which the actions must be completed. Attached as Exhibit F is a copy of this memo.

80. Therefore, the Page 13 issued to Mr. Burrows was deficient and should not have been used to discharge him under Project Upgrade 84.

81. The only other way for Mr. Burrows to have been discharged under Project Upgrade 84 is if he had received "two consecutive enlisted performance evaluations, either regular or special, with unsatisfactory marks for professional factors of 1.0 in either military or ratings knowledge performance or with an overall evaluation, where applicable of 2.0."

82. The only evaluation that Mr. Burrows had received before being designated for Project Upgrade 84 was from the period between 9 June 1983 (through) 31 January 1984, where

Mr. Burrows scored three 3.4 ratings and four 3.2 ratings in a total of seven areas. Attached as Exhibit G is Mr. Burrows only evaluation before being processed for discharge under Project Upgrade 84.

83. Mr. Burrows did have another evaluation on May 25, 1984, the day of his discharge from the Navy that did have rating from 2.6-2.8 (in nine areas,) all still higher than the requirements of 1.0-2.0 to be discharged under Project Upgrade 84. Attached as Exhibit H is Mr. Burrows only evaluation after being processed for discharge under Project Upgrade 84.

84. Therefore, Mr. Burrows could not and should not have qualified for Project Upgrade 84.

85. According to the Fifth Amendment of the United States Constitution, "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

86. Mr. Burrows Naval service constituted contractual employment by the United States Navy.

87. Mr. Burrows was contractually obligated to serve from 11 January, 1983 to 10 January, 1987.

88. Mr. Burrows theoretically could have continually re-enlisted after January of 1987 and could have continued his military service for numerous years.

89. Mr. Burrows was wrongfully deprived of a property interest in that he was deprived of the continuation of his contractual employment with the United States Navy by a faulty discharge under Project Upgrade 84.

90. According to the Supreme Court of the United States, "Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or

"property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424, U.S. 319, 332 (1976).

91. The Supreme Court stated that "precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives [its citizens] of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).

92. Mr. Burrows was afforded no such opportunity to be heard before the Navy wrongfully designated him as dischargeable under Project Upgrade 84.

93. By placing in the narrative for reason separation on Form DD214 "Unsatisfactory Performance-Failure to Perform Duties and Assignments". the comments are prejudicial, derogatory and capricious against Mr. Burrows and should be removed from his DD214.

94. Mr. Burrows initial attempt to get the Board of Correction to review his discharge was hindered by his service record being unavailable for over 2 years after his discharge.

95. Despite trying to work through the Naval Board of Corrections (several times since his discharge), Mr. Burrows came away from each instance with the Naval Board of Corrections having failed to even review his complaints and having failed to investigate his claims, therefore, also denying Mr. Burrows any "opportunity to be heard."

**WHEREFORE**, Plaintiff, Rick A. Burrows, respectfully prays that judgment be entered against Defendants, United States Department of the Navy, Secretary of the Navy Carlos Del Toro, and United States Department of the Navy Board for Correction of Naval Records for back-pay in an amount designated appropriate by this Court, including pay for the estimated increases in rank that Plaintiff would have attained; the upgrade of Plaintiff's discharge status to

honorable, with re-enlistment status returned to RE-1 and a new DD214 issued; the awarding of veteran's benefits to Plaintiff; and for such other and further relief as may be just and proper.

Respectfully submitted,

HOWARD HAAKE, LLC

_____
Derek R. Haake, #64301
511 West Pearce Boulevard
Wentzville, Missouri 63385
(314) 325-9868
derek@howardhaake.com

*Attorney for Plaintiff*

STATE OF MISSOURI     )
                      ) ss.
COUNTY OF ST. CHARLES )

**RICK A. BURROWS**, of lawful age, upon being duly sworn upon his oath states and disposes the facts contained in the above and foregoing are true, accurate and correct, to the best of his information, knowledge and belief.

_____
RICK A. BURROWS

SUBSCRIBED AND SWORN to before me, a Notary Public in and for the State and County aforesaid this 29th day of November, 2021.

LORI A. JONES
Notary Public, Notary Seal
State of Missouri
Warren County
Commission # 14498121
My Commission Expires 10-29-2022

My Commission Expires:

October 29, 2022

_____
Notary Public
Lori A. Jones
Commissioned in Warren, Co., MO
Commission No. 14498121